CITIZENS STATE BANK OF SYKESTON, NORTH DAKOTA, Appellant, v. VAN BRUNT AUTOMOBILE COMPANY, Appellee.

REFORMATION OF INSTRUMENTS: Instruments Nonreformable— Nonnegotiable Note. The indorsee of a *negotiable* promissory note who, in effect, delivers the note to the original payee with directions to surrender the same when the maker renews it by the execution of a new note, and who, after such renewal is executed in a *nonnegotiable* form by the maker, under an arrangement with the original payee (and under the understanding on the part of the maker that the original payee was still the owner of the note), accepts, retains, and in no manner repudiates said renewal note, may not have the same so reformed as to make it negotiable in form, nor may he have judgment in equity on the surrendered note.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

JUNE 22, 1923.

SUIT in equity, to reform a nonnegotiable promissory note so as to render the same negotiable in form. The defendant was the maker of the note. The Interstate Tractor Company (not a party herein) was the payee of the note. The plaintiff was a purchaser and indorsee of the note from the payee. It was not otherwise a party to the note. At the close of plaintiff's evidence, the trial court dismissed its petition, presumably upon

the ground that its evidence failed to disclose any contractual relation between it and the maker of the note at the time of its execution. The plaintiff appeals.—*Affirmed.*

*P. H. Paulsen,* for appellant.

*Mears & Lovejoy* and *Addison G. Kistle,* for appellee.

EVANS, J.—I.  The note under consideration was given by the maker to the payee in purported renewal of. a previous note then falling due, held by the payee against such maker. Such previous note was for $1,072, bearing date June 12, 1918, and due in six months, without interest until after due. At the time of such renewal, the plaintiff was the actual owner of such previous note, having acquired the same as a holder in due course, by purchase from the payee. The plaintiff had consented through the brokerage agency of one Jameson to renew said previous note for a period of three months. The plaintiff had purchased the note through Jameson, as an agent or broker for the Interstate Tractor Company, the payee. At the time of such purchase, Jameson had contracted to collect the note when due, without charge to the plaintiff. Prior to the due date of the note, Jameson had requested a renewal for a period of six months. He purported to do this on behalf of the Interstate Tractor Company, as indorser, and not on behalf of the maker. Pursuant to correspondence between the Interstate Tractor Company and the defendant, the defendant executed and delivered to the Interstate Tractor Company the note in suit, in discharge of the previous note, such previous note being then surrendered to it either by said payee or by Jameson. The note thus delivered was nonnegotiable in form, in that it was drawn payable to the "Interstate Tractor Company," and not "to the order of" the Interstate Tractor Company. The previous note then surrendered to the defendant was in proper negotiable form. The note in suit was thereupon indorsed by the payee and delivered to the plaintiff, and was accepted by it in the first instance without objection. Two months later, it discovered, as it claims, the defect of form in the note, and immediately started to obtain a reformation thereof. The

record does not disclose what such efforts were, or whether any of them were directed to the defendant. The plaintiff has never in terms rejected the note nor offered to rescind the transaction of purported renewal; nor has it predicated any right of recovery upon the original note, as having been surrendered without or in excess of authority. The Interstate Tractor Company appears to have been either a manufacturer or a distributor of tractors, located at Waterloo, Iowa. The defendant company was a distributor of automobiles and tractors at Council Bluffs, Iowa. The original note was given by the defendant to its payee for the purchase price of a tractor, to be delivered in the future by the payee and to be paid for by the defendant when sold. The agreement between the defendant and the payee was that the note should be extended from time to time without interest, until the tractor contracted for should be received and sold by the defendant. The tractor had not been received by the maker of the note at the time the original note was renewed by the note in suit. Such original note appears also to be one of many delivered by the defendant to the Interstate Tractor Company under the same agreement. At the same time, the defendant company held the promissory obligations of the Interstate Tractor Company for more than $50,000, and had at all times a complete defense by way of offset to the original note, as against the payee. Though the agreement implied an obligation on the part of the payee to retain possession and control of the defendant's notes, yet it did, in fact, negotiate the same to innocent purchasers, to whom it paid a discount equivalent to 8 per cent interest. It employed Jameson as a broker for such purpose, and it was through such brokerage that the sale was made to the plaintiff. The plaintiff was a resident of North Dakota. All its correspondence was had with Jameson. In such correspondence, Jameson purported to represent the Interstate Tractor Company, indorser of the note.

The record discloses nothing that would justify the inference of any agency by Jameson or by the Interstate Tractor Company for the defendant company. Prior to the execution of the note in suit, the defendant had notified the Interstate Tractor Company of its refusal to deliver its further obligations in negotiable form, and it had returned unsigned a con-

siderable number of notes prepared in negotiable form. Its conduct in signing the note in suit was consistent with its previous attitude toward the payee. The note in suit, when executed by the defendant, was forwarded to the payee. Not only was such payee presumed to know and assent to the nonnegotiable form thereof, but its treasurer testified to actual knowledge that the note was drawn upon a nonnegotiable form. The note was delivered to Jameson, who did not know or discover its nonnegotiable character, and who forwarded it to the plaintiff, duly indorsed by the payee. So far as appears, the defendant had no knowledge that anyone had any interest in the note surrendered to it, except the payee itself. The plaintiff had never communicated in any manner with the defendant. It sent the note to Jameson for collection, consenting, however, that he might take a renewal note, due in three months. We are disposed to assume that the implication of such a consent was that the renewal note should be negotiable, as was the original note. If Jameson be deemed the agent of the plaintiff for the time being, yet he did not purport to deal directly with the defendant. He simply permitted the Interstate Tractor Company to carry on the negotiations with the defendant in precisely the same manner as though it still owned the paper which it was surrendering. So far as known to the defendant, the only parties concerned in the execution of the renewal note were the maker and the payee. There was no misunderstanding between them. They both knew that the note was in nonnegotiable form. The defendant had a right to insist upon such form for its own protection. There was, therefore, no mutual mistake in the execution of such note by the maker, or in the acceptance thereof by the payee and subsequent indorser.

We are disposed to assume, also, that the plaintiff was not required to accept from Jameson or from the Interstate Tractor Company the note in suit, as a compliance with its instructions, and that it was entitled to reject the same and to demand the return of its original note or the proceeds of the collection thereof, on the ground that Jameson, as its agent, had no authority to surrender such original note, except upon payment thereof or upon receipt of a renewal note of like character. The difficulty with plaintiff's position is that it did not properly

comprehend its rights when it received the renewal note, and that it was not diligent in discovering that the note tendered did not accord with the power conferred by it upon Jameson. The note was not drawn to the plaintiff as payee, but to the Interstate Tractor Company. The plaintiff, therefore, was not a party to the note at the time it was made and only became a party in interest by a subsequent transfer and blank indorsement of the payee to it. There was no misunderstanding between the actual parties to the note in suit, at the time it was made. Whatever right or interest the plaintiff could be deemed to have had in the note at the time it was made, was a hidden equity, which had never been disclosed to the defendant. It did not hold the legal title to such renewal note at the time it was made. It acquired that subsequently, by a formal transfer from the Interstate Tractor Company. The plaintiff did have a legal right to the original note. It held the legal title thereto. But even that fact was not made apparent to the defendant. The evidence of its title did not appear, either upon the face or upon the back of such original note. It held the same by blank indorsement only. Such an indorsement passed title by delivery to any holder. Possession of the note was evidence of the identity of the holder. Even this index of ownership was not protected by the plaintiff. It intrusted this possession to others, without any notice to the defendant. The defendant executed the new note to the Interstate Tractor Company while such company had possession of the original note, as the apparent title holder. In so far as the Interstate Tractor Company may be deemed in law to have constituted itself an agent of the plaintiff, yet the plaintiff remained under cover, as an undisclosed principal. The defendant was not charged with notice of its relation to the paper. As between it and the payee of the note, the defendant was within its rights in executing and delivering to the payee a nonnegotiable note. The contract as made was binding upon both of them. It was not necessarily binding upon the plaintiff. The plaintiff was not bound to accept such note. When the note was indorsed and tendered to the plaintiff by or on behalf of the Interstate Tractor Company, the plaintiff had a right to accept it or to reject it. Whether it should accept it or reject it, it could not, in either

event, have any right of alteration or reformation therein by reason of its form. If it accepted, it took the note as it was. Its acceptance ratified the form. If it rejected, then it had no interest in reforming it. In case of rejection, it had its remedy against the Interstate Tractor Company. If it had any remedy against the defendant, it was to recover the original note, as having been surrendered without or in excess of authority. Whether such remedy would have been actually available to it, we have no occasion to decide, and are, therefore, not prepared to express an opinion. It did not reject the note. It did accept it. Two months later, it claims to have discovered the nonnegotiable character of the note and made *objection* thereto. To whom? Not to the defendant. Even then it did not *reject* the note. It did not rescind or return. It simply objected to the form of it, and claimed a reformation. It took its title thereto from the Interstate Tractor Company. In case of rejection, its first duty was to return it to that company. While it held the note, it stood in the shoes of the payee. It could escape that part of its dilemma by returning it to the payee. The payee could accept its return, but it could not reform it; nor was it in any position to demand a reformation from the defendant. So far, therefore, as the note in suit is concerned, the right of the plaintiff, as against the maker of the note, never rose any higher than the right of the payee. It necessarily follows that it had no greater right of reformation therein than the payee had.

II.   It is strongly urged by counsel for appellant that, if the plaintiff is not entitled to a reformation of the contract, then it must be entitled to relief in some other form. In the event of our refusal of the particular relief prayed, counsel asks that we award judgment for the plaintiff upon the original note, and that this be done under the prayer for general equitable relief. There is much in the record that appeals to the sense of equity. A court of equity often extends relief with much ingenuity. But it is also quite as often baffled by the course of conduct of otherwise worthy litigants. If the defendant maker of the note in suit had known, at the time of the making thereof, that the original note was the property of another, and that the Interstate Tractor Company was only

acting as a quasi agent of the owner, there would be much ground for saying that the plaintiff could, by proper course on its part, recover from the defendant the surrendered note, and recover upon it. If the renewal note had been drawn payable to the plaintiff, as payee and as the owner of the surrendered note, this would have been sufficient to charge the defendant with knowledge of the scope and power of the agency of the Interstate Tractor Company. In such event, a rejection of the note would have left all parties *in statu quo*. No such course was followed. Plaintiff was not legally bound to notify the defendant of its ownership of the original note. Its title thereto was complete, without such notification. Nevertheless, it would have been to the mutual advantage of both parties, presumably innocent, if it *had* communicated its interest. What the plaintiff did do was to clothe Jameson, and through him to clothe the Interstate Tractor Company, with every index of title to the note, and to keep itself in hiding as an undisclosed principal, while the apparent holder and owner of the note carried on its negotiations with the maker. In so doing, it lost equitable ground. As to what the remedy of the plaintiff might have been under different circumstances, we need not speculate. Though it be said that the plaintiff could have availed itself of the right to recover upon the original note, yet the choice of such a remedy would have imposed upon the plaintiff a course of conduct which it has not followed. If, when the plaintiff received the note in suit, it had rejected it, upon discovery of its form, within a reasonable time, and had thereby repudiated the acts of its agent in the surrender of the original note, yet it was incumbent upon it to give prompt notice of its attitude and its purpose. It would not be sufficient to give such notice to its agent and to its indorser alone. It should have disclosed itself to the maker, and should have given the same notice to it. Such maker was entitled to prompt notice, in order that it might adjust itself to the changed conditions. No such course was followed by the plaintiff. The record discloses no communication of any kind, passing from the plaintiff to the defendant. It appears from the record that, within four months from the making of the new note, the Interstate Tractor Company went into bankruptcy. Whatever remedy either plaintiff

or defendant has as against it, is practically worthless. Its negotiation of the defendant's notes to the plaintiff and to others was a breach of faith, which operated to the detriment of the defendant. The course of conduct actually adopted by the plaintiff, however innocently intended, operated, in fact, as a cover of concealment for such breach; whereas, if the plaintiff had rescinded or repudiated the transaction, and had adopted an appropriate course of conduct to that end, it would have exposed immediately the wrongful conduct of its indorser, and would presumably have enabled the defendant to minimize its loss therefrom. We hold at this point only that the plaintiff cannot recover upon the original note, because he chose to hold and to enforce the second one, and because he failed to rescind or to repudiate by any appropriate method. The decree entered below is, accordingly,—*Affirmed.*

.. PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.